# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF LOUISIANA

IN RE:

| | |
|---|---|
| LEATHA MAE MCDANIEL<br>    DEBTOR | CASE NO.: 06-10187 |
| | CHAPTER 7 |
| RICHARD MCBRIER<br>D/B/A RICHARD MCBRIER CONTRACTOR<br>    PLAINTIFF | ADV. PROC.: 06-1079 |

VERSUS

LEATHA MAE MCDANIEL
    DEFENDANT

## MEMORANDUM OPINION

Richard McBrier, d/b/a Richard McBrier Contractor ("McBrier") sued debtor Leatha Mae McDaniel ("McDaniel"), alleging that debtor's $10,811.11 debt to McBrier is not dischargeable under 11 U.S.C. §523(a)(2) and (6). This opinion explains why the debt is not excepted from discharge.

## FACTS[1]

Plaintiff's dischargeability complaint is based on an unsatisfied state court judgment.[2] The state court action arose from McDaniel's failure to pay McBrier for repairing damage to her home.

On June 2, 2004, a tree fell on the debtor's house. McBrier, the debtor's neighbor, offered to repair the damage for the amount McDaniel's insurer, Allstate Insurance Company ("Allstate"), would pay for the repairs. On June 24, 2004, Allstate estimated that the debtor's

---

[1] The defendant did not appear for trial and her counsel was thirty minutes late for trial. This ruling is based solely on the plaintiff's evidence, because the defendant offered no evidence.

[2] *Richard McBrier d/b/a Richard McBrier Contractor v. Leatha McDaniel*, Number 525,403, Section 22, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

house could be repaired for $18,659.71[3]  McDaniel signed a contract on July 5, 2004 agreeing to pay McBrier $18,659.71 for the labor and materials necessary to do the work.[4]  Allstate eventually issued a check for that amount jointly payable to McDaniel and her mortgagee, Chase Manhattan Mortgage Company ("Chase").[5]

Chase required proof that the work was complete before it would endorse the check.  On July 2, 2004, three days before McDaniel signed the contract with the plaintiff, Chase faxed instructions to McDaniel outlining the steps necessary for Chase to endorse the check over to her.[6]  Among other things, Chase required a final property inspection confirming that work was complete.  Chase also required an affidavit from a contractor confirming that it actually had performed the work.  McBrier never signed an affidavit that he had completed the work, though Fidelity National Field Services, Inc. inspected McDaniel's house on August 4, 2004 and reported that the repairs were done.[7]

Some time after McDaniel received the Allstate check, she cashed it.  The record did not establish how McDaniel secured Chase's endorsement, or the date on which Chase endorsed the check.[8]

McBrier testified that after he finished the work on August 1, 2004, he asked McDaniel about signing the affidavit.  McDaniel told him that he did not need to sign anything because she

---

[3] Pl.'s Ex. 7, attachment.

[4] Pl.'s Ex. 4a, 4b, and 4c.

[5] Because neither party introduced the check, the evidence did not establish the date Allstate issued the check,.

[6] Pl.'s Ex. 5.

[7] Pl.'s Ex. 4d.

[8] Though McBrier's complaint theorized that McDaniel submitted a false affidavit in order to secure Chase's endorsement, *see* Pl.'s Compl. at ¶VI, the plaintiff produced no evidence to support the allegation.

had taken care of everything. McBrier also testified that when he asked the debtor for payment several times over the succeeding weeks, McDaniel said she would pay him as soon as she received the check from Allstate. McBrier only later learned that Allstate had issued the check, and confronted the debtor about it. McDaniel then offered the plaintiff a check for $4,130.02,[9] telling McBrier that was all she intended to pay him.

McBrier filed a lien against McDaniel's property and sued the debtor to enforce the lien and to collect the contract price. On June 9, 2005, Judge Timothy Kelley rendered judgment in McBrier's favor recognizing the lien and awarding damages of $17,784.71.[10] This amount includes the value of McBrier's services, and costs. The state court also awarded McBrier $300 (the cost of filing his lien) and twenty-five percent attorney's fees.[11] According to McBrier's complaint, McDaniel has satisfied part of judgment, but still owes $10,181.11, plus legal interest from October 28, 2005.[12]

McDaniel filed chapter 7 on April 12, 2006.

## LAW AND ANALYSIS

Section 523(a) of the Bankruptcy Code excepts various categories of debts from the discharge granted under section 727. 4 COLLIER ON BANKRUPTCY ¶523.01 (15th ed. Rev.). McBrier, as the plaintiff, bears the burden of proving by a preponderance of the evidence the elements of his objection to the dischargeability of the debt. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991); *Matter of Fields*, 926 F.2d 501, 503 (5th Cir.

---

[9] Pl.'s Ex. 6.

[10] Pl.'s Ex. 1 and 2.

[11] Pl.'s Ex. 1 and 2.

[12] Pl.'s Compl. at ¶XI.

3

1991), citing *In re Benich,* 811 F.2d 943 (5th Cir. 1987). Exceptions to dischargeability should be construed in favor of the debtor. *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005), citing *Fezler v. Davis* (*In re Davis*), 194 F.3d 570, 573 (5th Cir.1999).

**I. McBrier did not Prove that McDaniel's Debt is Nondischargeable under Section 523(a)(2).**

McBrier first objects to dischargeability of the debt under 11 U.S.C. §523(a)(2). Section 523(a)(2) provides in relevant part that a discharge under 11 U.S.C. §727 does not relieve an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's [ ] financial condition; or
>
> (B) use of a statement in writing –
>
>> (i) that is materially false;
>>
>> (ii) respecting the debtor's [ ] financial condition;
>>
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>
>> (iv) that the debtor caused to be made or published with intent to deceive.

***A. McDaniel's debt to McBrier is not excepted from discharge under 11 U.S.C. §523(a)(2)(A).***

A debt may be nondischargeable under 11 U.S.C. § 523(a)(2)(A) when a debtor makes promises of future action that he had no intention of fulfilling when they were made. *Matter of Bercier*, 934 F.2d 689, 692 (5th Cir. 1991), citing *In re Roeder*, 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986). However, McBrier did not prove that McDaniel misrepresented her intentions to pay. McDaniel undeniably breached her agreement to pay plaintiff for his services, as the state court

4

judgment recognizes. However, McDaniel's reneging on her agreement to pay McBrier does not demonstrate that she misrepresented her intention to pay plaintiff when she signed the contract, or even before he completed the work. *Bercier*, 934 F.2d at 692. McBrier produced no evidence indicating that McDaniel did not intend to pay him when she signed the contract or later when she assured him that his payment was coming. Nor did McBrier prove that McDaniel falsely assured him of payment after the Allstate check was negotiated, since the plaintiff did not establish that date.

McBrier did not prove that McDaniel lacked the intent to pay him before he undertook or completed the work on her home. Accordingly, McDaniel's debt to McBrier is not excepted from discharge by 11 U.S.C. §523(a)(2)(A).

### *B. McDaniel's debt to McBrier is not excepted from discharge under 11 U.S.C. §523(a)(2)(B).*

The requirement that the writing statement be materially false "with respect to the debtor's financial condition" is central to the section 523(a)(2)(B) dischargeability exception. However, the debtor's contract with McBrier does not make any representation about McDaniel's finances or financial condition. *See In re Sanford*, 2007 WL 542163 (Bankr. M.D. La.) (exception to dischargeability under section 523(a)(2)(B) maintained where financial statement represented assets pledged as collateral in which debtor had no interest at the time of submission); *In re Lefeve*, 131 B.R. 588 (Bankr. S.D. Miss. 1991) (debtor's financial statement showed assets in which debtor had no interest at the time of submission). The contract merely evidences a promise to pay in exchange for McBrier's services. Moreover, the evidence did not reflect that McDaniel provided McBrier with any other written statements relating to her financial condition. Accordingly, McDaniel's debt to McBrier is not excepted from discharge under 11 U.S.C. §523(a)(2)(B).

5

## II. McBrier did not Demonstrate that McDaniel Intended to Cause Him or His Property Injury Under Section 523(a)(6).

McBrier's second objection to dischargeability is based on 11 U.S.C. §523(a)(6), which renders nondischargeable any debt for a debtor's willful and malicious injury to another entity or to the entity's property.

According to the Supreme Court, the section 523(a)(6) exception to discharge is limited to acts that may be classified as "intentional torts." *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998). Consistent with the Supreme Court's ruling, the Fifth Circuit articulated the standard for applying section 523(a)(6) in *In re Miller,* 156 F.3d 598 (5th Cir. 1998). The *Miller* court held that an injury is "willful and malicious" where the debtor's conduct would cause injury according to an objective substantial certainty of harm standard or upon a showing that the debtor had a subjective motive to cause harm. 156 F.3d at 606. Read together, *Geiger* and *Miller* require a debtor to act with the intent to cause harm to another entity, or the entity's property, before a resulting debt is excepted from discharge by section 523(a)(6).

McBrier argues that McDaniel's debt to him is a nondischargeable conversion, because the debtor failed to pay him the insurance proceeds. Although a conversion can constitute a "willful and malicious injury" to the property of another entity, *Bd. of Regents v. Walker*, 142 F.3d 813, 824 (5th Cir. 1998), citing *McIntyre v. Kavanaugh,* 242 U.S. 138 (1916), McDaniel did not convert McBrier's property.[13] McBrier did not have any property interest in the insurance check or proceeds. The insurance check was jointly payable to McDaniel and her mortgagee. McBrier was not a payee, nor did McDaniel negotiate the check to him. Moreover, the record

---

[13] Under Louisiana jurisprudence, "[a] conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985). In other words, a conversion is the wrongful possession or disposition of the *property of another*.

6

does not contain any evidence that McBrier acquired a security interest in the insurance proceeds.  *See Walker*, 142 F.3d at 824 (act of selling secured party's collateral can result in a willful and malicious injury for purposes of section 523(a)(6)).  Thus, McBrier did not prove that McDaniel caused a willful and malicious injury to his property, so the debt is not within the scope of 11 U.S.C. 523(a)(6).

## CONCLUSION

McBrier did not prove by a preponderance of the evidence that McDaniel made false representations or committed fraud at the time she signed the contract or when she assured him of her intent to pay him.  McBrier failed to demonstrate by a preponderance of the evidence that McDaniel provided him with writings respecting her financial well-being.  McBrier also failed to prove by a preponderance of the evidence that McDaniel committed a willful and malicious injury to him or his property.  Accordingly, McDaniel's debt to McBrier is dischargeable.

Baton Rouge, Louisiana, May 17, 2007.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE